114 P.3d 1233 (2005)
Alan HARRINGTON, individually and dba Harrington Construction, Petitioner,
v.
SPOKANE COUNTY, a political subdivision of the State of Washington, Respondent.
No. 22837-1-III.
Court of Appeals of Washington, Division 3, Panel Eight.
June 23, 2005.
*1236 Stanley R. Schultz, Attorney at Law, Liberty Lake, WA, Stacy A. Bjordahl, Attorney at Law, Spokane, WA, for Appellant.
Martin D. Rollins, Spokane County Prosecutor's Office, Spokane, WA, for Respondent.
SWEENEY, A.C.J.
¶ 1 Standing to seek judicial review of a land use decision generally requires the petitioner to exhaust all administrative remedies. The superior court dismissed this land use petition because, among other things, the landowner failed to exhaust his administrative remedies. We agree with that decision and affirm.

FACTS
¶ 2 This is a dispute between Alan Harrington doing business as Harrington Construction and Spokane County (County) over the conditional grant of a permit to build a residence on a lot adjoining a canal off Long Lake.
¶ 3 In 1989, developer Gary Correll, Mr. Harrington's predecessor-in-interest, bought property on Long Lake for residential development. Mr. Correll constructed a canal through the subdivision to give each lot direct access to the lake. When Mr. Correll applied for a permit to install a central sewer system, the Department of Ecology designated the canal as "shoreline" subject to both the Shoreline Management Act of 1971 (chapter 90.58 RCW) (Act) and the Spokane County Shoreline Master Program. Mr. Correll disputed the shoreline designation but did not appeal it to the shoreline hearings board as required by the Act. Instead, he sued in superior court for a declaratory judgment that the canal was not shoreline. The court dismissed the action for failure to exhaust administrative remedies. We affirmed that decision in an unpublished opinion. Correll v. Dep't of Ecology, noted at 102 Wash.App. 1054, 2000 WL 1514842 (2000).
¶ 4 Mr. Harrington acquired one of the lots and in 2002 proceeded with his plan to build a single family residence on it. He first applied to the Spokane Regional Health District for a permit to install a conventional septic tank system. The Health District issued the permit on August 13, 2003. Mr. Harrington then submitted the permit with an application to the Spokane County Department of Building and Planning.
¶ 5 In a letter dated August 19, 2003, Spokane County withheld the permit because the proposed sewage system did not comply with the County's shoreline master program. The program includes a set of regulations for on-site sewage systems for single-family residences. The regulations require a 10-foot vertical separation between the ground water table and the bottom of any sewage system drain field or dry pit. Spokane County Shoreline Master Program (SCSMP) § 9.2.11 (the standard vertical separation is three feet). Mr. Harrington's proposed vertical clearance was less than 10 feet. He argued that the canal was not shoreline for the purposes of SCSMP § 9.2.11. The County rejected his argument. The County told Mr. Harrington that his remedies were either to seek an amendment to the regulation or to apply for a variance.
¶ 6 Mr. Harrington then submitted a proposal for a state-of-the-art alternative to the conventional gravity septic system. He argued that system should not be subject to the vertical clearance requirement because it employs neither a drain field nor a dry pit. Instead, this aerobic treatment unit treats waste in an internal digestion chamber to produce a clear, odorless, high quality effluent. Mr. Harrington asked the County to administratively interpret its regulations and evaluate the compliance of the aerobic treatment unit.
¶ 7 The County responded that it lacked the authority to render an administrative interpretation of its own regulations as applied to his proposed treatment unit. It explained that the shoreline master program does not just require that sewage systems with a drain field or dry pit have a 10-foot vertical clearance. Rather, only those systems with either a drain field or a dry pit and *1237 a 10-foot clearance can comply. The County again told Mr. Harrington that his administrative remedies were limited to trying to amend the shoreline master program or seeking a variance. The County insisted that no administrative review was available of the County's interpretation of the existing language of its regulations, because it was not authorized to render an interpretation. Not only could an alternative system not be approved, it could not even be considered.
¶ 8 Mr. Harrington replied that the County is the sole agency authorized by statute to administer the shoreline management regulations and that the County must have authority to interpret its own regulations. He also cited the County's earlier approval of an identical on-site aerobic treatment unit on another shoreline lot. The County acknowledged its exclusive statutory authority to administer the shoreline regulations, but insisted that the regulations contained no administrative process for considering alternatives to the systems contemplated by the regulations. And, while the previously granted permit for the same system could be construed as an administrative interpretation of the regulations, it should not be viewed as a policy that must be uniformly applied.
¶ 9 Mr. Harrington finally acquired and recorded an easement on neighboring property to install a conventional drainage system beyond the 200-foot shoreline management boundary. And the County issued a building permit the same day, November 25, 2003.
¶ 10 Mr. Harrington then filed a petition in the superior court on December 16, 2003, for judicial review under the Land Use Petition Act (LUPA), chapter 36.70C RCW. The land use decision appealed from was the County's grant of the modified permit. The petition challenged the canal's shoreline designation, the County's refusal to interpret its rules and render a decision on the aerobic treatment unit, and the alleged disparate treatment in the earlier approval of the identical aerobic treatment unit. Mr. Harrington claimed damages under chapter 64.40 RCW. That chapter provides relief for unreasonable government failure to act in the matter of land use permits. He also asserted 42 U.S.C. § 1983 claims for violations of his right to develop his property in accordance with the applicable land use regulations, denial of substantive and procedural due process, and violation of equal protection.
¶ 11 The County moved for summary judgment on a number of grounds: (1) LUPA specifically excludes judicial review of decisions reviewable by the shoreline hearings board. (2) The petition was untimely because approval of a permit is not appealable and Mr. Harrington never appealed the County's earlier adverse actions. (3) Mr. Harrington lacked standing because LUPA required exhaustion of administrative remedies. (4) Mr. Harrington alleged no injury in fact. (5) And the designation of the canal as shoreline was res judicata based on the 1999 Correll action.
¶ 12 The trial court granted the County's motion and dismissed the action. The court agreed that the County's approval of the permit was not appealable because it was not an "adverse decision." The adverse actions were instead the County's letters refusing to approve the conventional sewage system and refusing to consider the aerobic treatment unit. Because Mr. Harrington did not appeal those within the 21-day appeal period, the court concluded that his petition was untimely. The court also concluded that Mr. Harrington failed to exhaust his administrative remedies.

DISCUSSION
¶ 13 Mr. Harrington argues that the court cannot dismiss a LUPA petition without reaching the merits if he raises constitutional issues. He alleged that the shoreline master program deprived him of equal protection of state laws, both on its face and as applied. For this reason, he contends, he did not have to exhaust administrative remedies; there is no administrative remedy because only the courts can adjudicate constitutional claims. Prisk v. City of Poulsbo, 46 Wash.App. 793, 798, 732 P.2d 1013 (1987). The County responds that statutory standing requirements cannot be avoided simply by raising a constitutional issue. And standing always requires exhaustion of administrative remedies.

*1238 STANDARD OF REVIEW
¶ 14 We review the decision here de novo for a number of reasons. In reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Sherman v. State, 128 Wash.2d 164, 183, 905 P.2d 355 (1995). We view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party and review all questions of law de novo. Id. Summary judgment is appropriate where there are no disputed material facts, and the moving party is entitled to judgment as a matter of law. CR 56(c); Christensen v. Grant County Hosp. Dist. 1, 152 Wash.2d 299, 305, 96 P.3d 957 (2004). And there are no disputed material facts here.
¶ 15 Moreover, the appellate record here consists entirely of written material. So we are in the same position as the trial court and review the record de novo. Amren v. City of Kalama, 131 Wash.2d 25, 32, 929 P.2d 389 (1997). Also, the decision we review here turns on the interpretation of statutory procedural requirements, which also dictates de novo review. Hartson P'ship v. Goodwin, 99 Wash.App. 227, 231, 991 P.2d 1211 (2000). Finally, we review issues of statutory interpretation and jurisdiction de novo. See, e.g., Crosby v. Spokane County, 137 Wash.2d 296, 301, 971 P.2d 32 (1999). The issue of standing is jurisdictional. RCW 36.70C.040(2); Chelan County v. Nykreim, 146 Wash.2d 904, 926, 52 P.3d 1 (2002).

EXHAUSTION OF ADMINISTRATIVE REMEDIES
¶ 16 A party must exhaust all available administrative remedies before the superior court can grant relief. RCW 34.05.534; Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 866, 947 P.2d 1208 (1997). Finally, we, in the judicial branch, essentially recognize the agency's expertise. Id. The court will not intervene where an exclusive administrative remedy is provided. Id. This exhaustion of remedies doctrine is based on a number of legal policies. It avoids premature interruption of the administrative process, provides for full development of the facts, and allows the exercise of agency expertise. Id. The doctrine also protects the autonomy of administrative agencies by giving them the opportunity to correct their own errors. Id. It discourages litigants from ignoring administrative procedures by resort to the courts. Id. (citing McKart v. United States, 395 U.S. 185, 193-94, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)). Finally, we, in the judicial branch, essentially recognize the agency's expertise. Id.
¶ 17 Mr. Harrington asserts, however, that he was not required to exhaust his administrative remedies because he is asserting constitutional claims. But, where "`a party affirmatively seeks declaratory or injunctive relief,... it must show that its remedies have been exhausted in order to show it has standing to raise even a constitutional issue.'" Ryder v. Port of Seattle, 50 Wash.App. 144, 152, 748 P.2d 243 (1987) (quoting Ackerley Communications, Inc. v. City of Seattle, 92 Wash.2d 905, 908-09, 602 P.2d 1177 (1979)).
¶ 18 Mr. Harrington relies on Prisk for the proposition that only the courts can decide a constitutional claim. But Prisk addresses the exhaustion requirement in the context of a challenge to the facial constitutionality of a law. Prisk, 46 Wash.App. at 798, 732 P.2d 1013. Mr. Harrington is correct that administrative agencies may not pass on the facial constitutionality of the statutes they administer. Id. But here, Mr. Harrington does not challenge the facial constitutionality of the shoreline act. He is challenging the County's compliance with the Act and its constitutionality as applied to him. Administrative review is, therefore, required to develop the facts necessary to adjudicate this "as applied" constitutional challenge. Presbytery of Seattle v. King County, 114 Wash.2d 320, 337-38, 787 P.2d 907 (1990).
¶ 19 Mr. Harrington's equal protection challenge is apparently directed at Spokane County's 10-foot vertical separation regulation. Stevens County requires only a three-foot vertical separation on the shoreline of the same lake. Again, the policies underlying the exhaustion of remedies requirement become important. A hearing by the shoreline hearings board might result in a ruling that the canal is misclassified as shoreline. Or, after reviewing the County's 10-foot vertical separation requirement for conformity *1239 with the statute and public policy, the board may agree that it is excessive. The board might even conclude, based on the scientific data, that the alternative system satisfies the regulation.
¶ 20 In short, because the administrative review process has not run its course, the agency has had no opportunity to correct any errors it might have made or to develop a factual and technical record for adequate review. The constitutional issues are not, therefore, ripe for review. The statutory standing requirement of exhaustion of administrative remedies was not satisfied.

TIMELINESS OF PETITION
¶ 21 Mr. Harrington assigns error to the trial court's decision that his petition for judicial review was untimely. He argues that he timely appealed within 21 days of the County's ultimate approval of his building permit. But the court was persuaded by the County's argument that only an adverse land use decision is reviewable, and that the granting of a permit is not reviewable. The court concluded, then, that the November 25 approval of Mr. Harrington's permit was not adverse and, therefore, not appealable. The court ruled that Mr. Harrington's 21-day appeal period could only be triggered by the County's August 19 letter withholding approval of his conventional gravity system or by its October 13 letter refusing to consider his aerobic treatment unit. Because Mr. Harrington did not appeal within 21 days of either of these letters, the court ruled that his December 16 LUPA petition was untimely.
¶ 22 Mr. Harrington supports his assignment of error to this ruling with two arguments. First, he contends that, because his petition includes constitutional issues, a three-year period for constitutional challenges applies, not the statutory 21-days. Second, he asserts that the preliminary letter rulings do not meet the criteria for appealable administrative decisions. He contends, therefore, that the statutory 21-day filing period commenced on November 25, when the County issued its final decision. And, therefore, his December 16 petition was timely.
¶ 23 The County and the trial court presume that only an outright rejection of a permit application in its entirety is adverse. This is the basis of the County's contention that Mr. Harrington failed to assert injury in fact because some sort of building permit was ultimately granted. But a decision granting in part and denying in part includes both favorable and adverse rulings. And, certainly, no public purpose would be served by limiting review solely to decisions that utterly defeat an application.
¶ 24 The statutory review provisions are in accord. LUPA provides for review of land use decisions, period. It contains no qualification that only the bottom line of a decision is reviewable. RCW 36.70C.060(1). The shoreline management act expressly cites the granting of a permit as a reviewable decision. Board review is available for every local decision "granting, denying, or rescinding" a permit. RCW 90.58.180(1).
¶ 25 Neither was Mr. Harrington required to seek review of the County's interim negative communications. To trigger the statutory time limit for seeking review, an agency must file and serve a final, appealable order. RCW 90.58.180(1); RCW 34.05.542(2); Valley View Indus. Park v. City of Redmond, 107 Wash.2d 621, 634, 733 P.2d 182 (1987). A letter does not meet this definition unless it clearly asserts a legal relationship and makes clear that it is the final point of the administrative process. Id. A decision must be clearly cognizable as a final determination of rights. Doubts as to finality are resolved against the agency. WCHS, Inc. v. City of Lynnwood, 120 Wash.App. 668, 679, 86 P.3d 1169, review denied, 152 Wash.2d 1034, 103 P.3d 202 (2004).
¶ 26 Here, the earlier negative communications from the County were not clearly cognizable as a final determination of rights and did not, therefore, trigger the statutory time for seeking relief. Mr. Harrington, then, met the statutory filing limit by seeking review within 21 days of the partial approval of his application with its implicit denial of his original request.

*1240 AVAILABLE ADMINISTRATIVE REMEDIES
¶ 27 Mr. Harrington challenges the County's classification of the shoreline and the application of the shoreline regulations to his project. At the same time, he insists that the administrative remedies of the shoreline management act do not apply. Mr. Harrington argues that the County's land use decision here is subject to judicial review under LUPA.
¶ 28 Mr. Harrington filed his petition under LUPA, chapter 36.70C RCW. He also claimed damages under the provisions of chapter 64.40 RCW, which provides relief from arbitrary and capricious land use decisions. We conclude that the appropriate regulatory scheme under which to have sought relief is the shoreline management act, chapter 90.58 RCW. But, in any event, all three statutory schemes still require the exhaustion of administrative remedies.

Land Use Petition Act
¶ 29 It is the intent of the legislature that judicial review of land use decisions be uniform, consistent, predictable, and timely. RCW 36.70C.010.
¶ 30 LUPA is the exclusive means of judicial review of land use decisions, with certain exceptions. RCW 36.70C.030. One of those exceptions is that LUPA does not accommodate judicial review of a land use decision that is subject to review by a quasi-judicial body created by state law. RCW 36.70C.030(1)(a)(ii). Specifically, decisions reviewable by the shorelines hearings board are not subject to judicial review under LUPA. Id.
¶ 31 All of the land use issues here fall squarely within the jurisdiction of the shorelines hearings board and, as such, are excluded from LUPA. RCW 90.58.040. Mr. Harrington asserts that his canal property either has never been classified as shoreline or that it was erroneously so classified. He asserts that, even if the canal is shoreline, construction of a single family residence is exempt from shoreline regulations. Finally, he argues that, if the regulations do apply, the County's interpretation which precludes evaluation of a system without a drain field was in error. LUPA categorically precludes judicial review of all these issues by way of a LUPA petition. The shoreline management act's own administrative remedies are the only remedies. RCW 36.70C.030(1)(a)(ii).

Shoreline Management Act
¶ 32 The Shoreline Management Act of 1971, chapter 90.58 RCW (Act), applies to the questions raised here. Shoreline development must conform with the Act and with local government shoreline master programs. RCW 90.58.080(2); Buechel v. Dep't of Ecology, 125 Wash.2d 196, 203-04, 884 P.2d 910 (1994). The Spokane County Shoreline Master Program is to be construed to give effect to the objectives and purposes for which it was enacted. RCW 90.58.900. One purpose is to protect statewide interests over local interests. RCW 90.58.020(1). The applicant for a permit has the burden of proving that a proposed development is consistent with the Act. RCW 90.58.140(7).
¶ 33 A person aggrieved by the granting, denying, or rescinding of a permit may seek review by the shorelines hearings board. RCW 90.58.180(1). The local agency's action on the permit application is termed the "final decision." RCW 90.58.180(1).
¶ 34 Administrative review is obtained by filing a petition within 21 days of the date of filing of the decision. RCW 90.58.180(1). The "filing" refers to the requirement that every final decision on an application for a shoreline development permit  including an approval  must "be filed with the [Department of Ecology] and the attorney general." RCW 90.58.140(6).
¶ 35 To obtain judicial review of the shoreline hearings board's action, the applicant proceeds under the adjudicative review provisions of the Administrative Procedure Act, chapter 34.05 RCW, not LUPA. RCW 90.58.180(3).

Chapter 64.40 RCW
¶ 36 Mr. Harrington's LUPA petition also included a claim for damages for violation of his property rights under chapter 64.40 RCW. This statute creates a claim for losses caused by arbitrary, capricious, and *1241 unlawful government action or inaction in the matter of land use applications. RCW 64.40.020(1). Mr. Harrington alleged the County acted arbitrarily and capriciously in denying his request to install the aerobic treatment unit.
¶ 37 But an action for damages under chapter 64.40 RCW also requires the exhaustion of all administrative remedies. RCW 64.40.030; Hayes v. City of Seattle, 76 Wash. App. 877, 879, 888 P.2d 1227 (1995), aff'd, 131 Wash.2d 706, 934 P.2d 1179, 943 P.2d 265 (1997).
¶ 38 Under all of Mr. Harrington's statutory theories of recovery, then, superior court jurisdiction is conditioned on the exhaustion of administrative remedies. And those administrative remedies were not exhausted here.

FUTILITY
¶ 39 Under LUPA a land use decision is, by definition, the final agency determination after all administrative remedies have been exhausted. RCW 36.70C.060; Ward v. Bd. of Skagit County Comm'rs, 86 Wash.App. 266, 270-71, 936 P.2d 42 (1997). The general rule, however, is that a court will not require a party to exhaust its remedies if to do so is shown to be futile. RCW 34.05.534(3)(b); Dioxin/Organochlorine Ctr. v. Dep't of Ecology, 119 Wash.2d 761, 776, 837 P.2d 1007 (1992).
¶ 40 Mr. Harrington asserts that pursuit of any administrative remedy here would have been futile. But he makes no such showing on this record, beyond a reference to a previous ruling by the Department of Ecology in a similar case that the canal is shoreline. And Mr. Harrington may be correct that seeking a text change or variance is not an appropriate remedy and would also be futile. But these objections do not explain why he did not ask the shoreline hearings board to review the County's refusal to evaluate the alternative treatment system under the existing ordinance. Without an administrative record on these issues, the court could not grant relief.

DISPOSITION
¶ 41 We affirm the decision of the trial judge dismissing Mr. Harrington's LUPA petition for failure to exhaust his administrative remedies.
WE CONCUR: KURTZ and BROWN, JJ.